UNITED STATES v. STANDARD OIL CO. OF INDIANA.

(District Court, W. D. Tennessee, E. D. November 17, 1910.)

No. 4,044.

CARRIERS (§ 38*)—INTERSTATE COMMERCE ACT—OFFENSES BY SHIPPERS—AC-
CEPTING CONCESSIONS.

An indictment under the Elkins act (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1909, p. 1138]) charging that defendant received concessions from the established through rate on shipments from Evansville, Ind., to Birmingham, Ala., via Grand Junction, Tenn., is not sustained by proof that shipments were made by defendant from Whiting, Ind., via Evansville to Grand Junction, for beyond, at the lawfully filed and published rate which was prepaid, and were forwarded from there to Birmingham on orders from the consignee, which paid the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

freight, although the cost of 'the transportation from Evansville to Birmingham was less than the established through rate between such points.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 96, 97; Dec. Dig. § 38.*]

Prosecution by the United States against the Standard Oil Company of Indiana. On motion by defendant for direction of verdict. Motion granted.

See, also, 154 Fed. 728.

Casey Todd, U. S. Dist. Atty., Geo. Randolph, Sp. Asst. U. S. Atty., W. S. Gregg, Sp. Asst. Atty. Gen., and Yandell Haun, Asst. U. S. Dist. Atty.

Robt. W. Stewart, Chauncey W. Martyn, and C. G. Bond, for defendant.

McCALL, District Judge. The indictment in this case is predicated upon section 1 of. an act of Congress, approved February 19, 1903 (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1909, p. 1138]), and commonly known as the "Elkins Act." The first section provides as follows:

"That it shall be unlawful for any person, persons or corporation, to offer, grant or give, or to solicit, accept or receive any rebate, concession or discrimination in respect of the transportation of 'any property in interstate or foreign commerce, * * * whereby any such property shall, by any device whatever, be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereto, or whereby any other advantage is given, or discrimination is practiced. Every person or corporation who shall offer, grant, or give, or solicit, accept or receive, any such rebates, concession or discrimination, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be punished by a fine of not less than one thousand dollars, or more than twenty thousand."

There are 1,524 counts in the indictment, and they differ only in respect to the dates of the alleged offenses, the points of destination of the shipments, the weight thereof, the numbers of the cars, and the freight rate from Evansville, Ind., to destination, the shipment in each count being petroleum or some product thereof. For convenience, therefore, we shall consider a count relating to Birmingham, Ala., that being the point referred to in the opening statement by counsel for the government.

In substance, the charge is that between the dates of November 1, 1903, and November 13, 1905, the Illinois Central Railroad Company and the Southern Railway Company were common carriers in interstate commerce, and engaged in the transportation of property over their connecting railroads, from Evansville, Ind., to Birmingham, Ala., under a common arrangement for a continuous carriage and shipment; that during the said period the lowest lawful rate and charge by said common carriers for the transportation of petroleum and its products in car load lots from Evansville, Ind., to Birmingham, Ala., was 33 cents for each 100 pounds thereof, and that all the facts stated in the indictment were well known to the defendant, the Standard Oil Company of Indiana. It is then charged that within the period of

time aforesaid, to wit, on the 4th day of December, 1903, and while the said joint tariffs and schedules of rates and charges were still in force on the said route of the said common carriers, said common carriers unlawfully did engage in the transportation in interstate commerce aforesaid from Evansville, Ind., to Birmingham, Ala., over the said route, and through the Eastern Division of the Western District of Tennessee, for and on account of, and pursuant to the request of, the Standard Oil Company, a corporation theretofore organized and then existing under the laws of the state of Indiana, of 38,957 pounds of a product of petroleum known as refined oil, in a tank car of the Union Tank Line Company, No. 3932, under the said common arrangement for a continuous carriage and shipment, and at a total rate and charge to the Standard Oil Company for such transportation of the said property of 23½ cents for each 100 pounds thereof, and that the Standard Oil Company, a corporation, as aforesaid, on the 4th day of December, in 1903, and within the Eastern Division of said Western District of Tennessee, unlawfully did knowingly accept and receive from the said common carriers a concession in respect of the transportation of certain of its property in interstate commerce, whereby, and by which device, that property was transported in such interstate commerce at a less rate than that named in the tariffs so published and filed as required by law by the said common carriers. Thus it appears that the specific charge is that the Standard Oil Company of Indiana accepted and received concessions in relation to the transportation of freight from Evansville, Ind., to Birmingham, Ala. The device by which it is alleged that the common carriers and the defendant violated the law is not set out in detail in the indictment. At the opening of the trial, however, counsel for the government stated to the court and jury the theory of the prosecution, and it was in substance as follows: That the defendant shipped its product over the connecting lines of railroad from Whiting, Ind., to Grand Junction, Tenn., for points beyond, at the rate of 13 cents per hundredweight; that upon or before its arrival at Grand Junction orders were given by the defendant to the joint agent of the Illinois Central and the Southern Railway Companies at Grand Junction to forward the shipment to Birmingham, the point of destination; that the rate paid by the defendant from Grand Junction to destination was that portion of the through legal rate from Evansville, Ind., to destination, over the Illinois Central and the Southern Railroads, which was earned by the Southern Railway for its haul from Grand Junction to destination; that the legal rate over the Illinois Central and the Southern Railroads from Evansville, Ind., to Birmingham, Ala., was 33 cents per hundredweight, and that the defendant paid the Southern Railway its proportion of this rate, which was 16½ cents; that the proportion of the 13-cent rate per hundredweight from Whiting to Grand Junction, for beyond, which was paid by the defendant to the Illinois Central Railroad was 7 cents as its part of the haul from Evansville to Grand Junction. The result being that for transporting 100 pounds of freight from Evansville, Ind., to Birmingham, Ala., the defendant paid only 23½ cents, which is the sum of 7 cents, the amount paid the Illinois Central for its haul from Evansville to Grand

Junction, and 16½ cents, the amount paid the Southern Railway for its haul from Grand Junction to Birmingham, when the legal through rate from Evansville to Birmingham was 33 cents, a net saving of 9½ cents per one hundredweight. When the counsel for the government announced that they had offered all their evidence and rested, counsel for the defendant moved the court to direct a verdict for the defendant, upon the ground that the evidence did not support the charges in the indictment, and that the government had failed to prove its case. This raises the question which I am now to pass upon.

The uncontradicted evidence in the case is that upon written orders from the Standard Oil Company of Kentucky to the defendant, the Standard Oil Company of Indiana, at Whiting, Ind., the defendant company shipped to the Kentucky Company each car load of freight covered by each count in the indictment to Grand Junction, Tenn., for beyond, with freight charges thereon prepaid to Grand Junction, and that such shipments were received at Grand Junction, Tenn., by the Kentucky Company, and that it gave orders before the arrival at Grand Junction for the forwarding of each carload of the freight to the points of destination, respectively, and that the Kentucky Company paid to the Southern Railway Company the freight charges from Grand Junction to the point of destination, and the rate so paid by it was that proportion of the legal rate from Evansville, Ind., to the point of destination earned by the carrier from Grand Junction to destination; that there was no understanding, expressed or implied, direct or indirect, between the defendant, the Indiana Company, and the Kentucky Company in regard to the rates to be paid on these shipments, but that the Kentucky Company purchased the oil from the defendant company just as it would purchase any other commodity from any other person or company, and the shipments were made in the same way.

Upon this state of facts, I held on a former day of the trial that the defendant company could not be found guilty under any count in the indictment of the offense of accepting concessions in regard to the transportation of the freight from Grand Junction to destination, it, in so far as the evidence shows, not having paid said freight, nor was it in any way connected therewith. If the defendant is guilty under any count in the indictment, it must be for having received and accepted concessions in relation to the transportation of the freight in question over the Illinois Central Railroad from Evansville, Ind., to Grand Junction, Tenn., which line formed a portion of the route over which the freight moved from Evansville to destination.

The testimony in regard to the movement of this freight south of Grand Junction, therefore, can only be considered for whatever it may be worth in shedding light upon the question as to whether or not the defendant company received and accepted concessions in relation to the transportation of the commodity from Evansville, Ind., to Grand Junction, Tenn.

Touching this part of the haul, the uncontradicted testimony before the court is that each car of the commodity covered by the indictment was shipped by the defendant from Whiting to Grand Junction, for beyond, and that the defendant company paid the rate of 13 cents per

hundredweight for the transportation thereof under said shipment; that during the period covered by the indictment there was a 13-cent rate on petroleum and the products of petroleum in car load lots from Whiting to Grand Junction, for points beyond, and this rate was duly on file with the Interstate Commerce Commission, and was the legal rate; that the shipments covered by the indictment were in car load lots from Whiting to Grand Junction, for beyond, and that the defendant paid this rate.

The government witness, Mr. Crossland, who holds a position with the Interstate Commerce Commission at Washington, and who has charge of the tariff rates filed in this case, in response to a question from the court, stated, in substance, that the defendant company, upon an order from the Kentucky Company for a shipment of oil in car load lots from Whiting to Grand Junction, for points beyond, were authorized to avail themselves of this 13-cent rate, that being the legal rate for such shipments, and, further, that if inquiry had been made of him by a shipper, for the purpose of ascertaining what the legal rate was during the period covered by this indictment on petroleum and its products, from Whiting to Grand Junction, for beyond, that he would have informed them it was 13 cents per hundredweight. The government having proven that the legal rate on petroleum and its products from Whiting, Ind., to Grand Junction, Tenn., for beyond, was 13 cents; that the defendant shipped the freight in question for its customer to Grand Junction, for beyond, and paid the legal rate—it would seem that that is conclusive of the case. There is evidence showing that these shipments were made from Whiting to Grand Junction "blind billed"—that is, no rate was inserted in the waybills; that this blind billing was done by the carrier. There is not a syllable of testimony tending to show that the defendant company knew that the carrier was so blind billing the shipment. But if the defendant had known this fact, how could that affect its right to avail itself of the 13-cent rate which was filed with the Interstate Commerce Commission? It is not the duty of the shipper to publish the rate, that is the duty of the carrier.

But it is said that blind billing the freight is evidence that there was an effort made to conceal the rate, and thus establish a secret rate. If that were true, it would only be an effort upon the part of the railroad company so to do, which could avail very little as against the defendant, in the face of the fact that that freight rate was on file in the public offices of the Interstate Commerce Commission at Washington, as the law requires.

Not only this, but each count in the indictment alleges that the defendant accepted a concession in respect of the transportation of certain freights from Evansville, Ind., to the points of destination beyond Grand Junction named in the indictment. There is not a word of testimony that one pound of this freight was shipped from Evansville to points of destination, but, upon the other hand, it clearly appears that every pound of the freight covered by the indictment moved from Whiting, Ind., billed to Grand Junction, Tenn., for points beyond, upon the order of the Standard Oil Company of Kentucky, and that

the defendant paid the legal rate in force at that time from Whiting to Grand Junction, for points beyond.

Under the facts in this case, I am of the opinion that proof that these shipments were made from Whiting to Grand Junction, for points beyond, does not support the charge in the indictment that the concession was accepted by the defendant company on freight transported from Evansville, Ind., to the points of destination south of Grand Junction which are named in the indictment. The court permitted this character of evidence to be introduced against the defendant, by going to the very verge of its discretion, simply for the purpose of affording the government the greatest latitude possible, consistent with justice, to prove that the defendant company was guilty as charged in the indictment, if it could do so. And this course the court pursued not only as to this particular item of evidence, but as to other material evidence offered by the government, for the same reason.

I am led to the conclusion that, since the introduction of the evidence began in this case, facts have been developed of which counsel for the government were not informed, and which have more or less taken them by surprise. However this may be, the rule is, and should ever continue to be, that before any citizen, however great or small, or any corporation, however rich or powerful, can be legally convicted and punished for crime, that crime must be established, under and according to the rules of evidence, and the forms of law. When the courts swing away from this rule, and those accused of crime are convicted by other means, the justice of our boasted jurisprudence will soon become a hollow mockery, and the judgments of the courts will be held in derision and contempt.

Gentlemen of the jury, under the testimony in this case, and under the law, if the case should be submitted to you, and you should return a verdict of guilty, I should feel it my sworn duty to set such verdict aside. The evidence is uncontradicted. It does not warrant a conviction beyond a reasonable doubt, nor, in my judgment, does it even preponderate in favor of the contention of the government.

Therefore, it becomes my duty to allow the motion made by counsel for the defendant, and to direct you to return a verdict of not guilty, and that will be your verdict. So say you all?